# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# NORTHERN DIVISION

JIMMY GEORGE CAVITT, III                                                                 PLAINTIFF

V.                                       No. 3:20-CV-326-DPM-JTR

KILOLO KIJAKAZI, Commissioner
Social Security Administration[1]                                                        DEFENDANT

## RECOMMENDED DISPOSITION

This Recommended Disposition (Recommendation) has been sent to United States District Judge D. P. Marshall Jr. Either party may file written objections to this Recommendation. Objections should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Marshall can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

## I.  Introduction

Plaintiff, Jimmy George Cavitt, III ("Cavitt"), applied for disability benefits on January 9, 2018, alleging disability beginning June 1, 2015. (Tr. at 10). After

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration and is substituted as the Defendant in this action. Fed. R. Civ. P. 25(d).

conducting a hearing, the Administrative Law Judge ("ALJ") denied his application on December 6, 2019. (Tr. at 21). The Appeals Council denied Cavitt's request for review (Tr. at 1), making the ALJ's denial of Cavitt's application for benefits the final decision of the Commissioner.

Cavitt filed this case seeking judicial review of the decision denying him benefits. For the reasons stated below, the Court should reverse the ALJ's decision and remand for further review.

## II.  The Commissioner's Decision

The ALJ found that Cavitt had not engaged in substantial gainful activity since June 1, 2015. (Tr. at 12). At Step Two of the five-step analysis, the ALJ found that Cavitt had the following severe impairments: joint dysfunction, spine disorder, loss of hearing without cochlear implant, mood disorder, and anxiety disorder. *Id*.

After finding that Cavitt's impairments did not meet or equal a listed impairment (Tr. at 13), the ALJ determined that Cavitt had the residual functional capacity ("RFC") to perform work at the light exertional level, except that: (1) he could occasionally stoop and crouch, but could never climb ladders; (2) he could occasionally reach overhead bilaterally; (3) he should avoid concentrated exposure to extreme humidity and wetness; (4) he could have no jobs requiring excellent hearing; (5) he could perform simple, routine, and repetitive tasks, as well as make simple work related decisions; (6) he could concentrate, persist, and maintain pace

The United States Supreme Court recently held that "whatever the meaning of 'substantial' is in other contexts, the threshold for such evidentiary sufficiency [in Social Security Disability cases] is not high. Substantial evidence…is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

B.  Cavitt's Arguments on Appeal

Cavitt contends that substantial evidence does not support the decision to deny benefits. He argues that the ALJ failed to sufficiently address apparent conflicts between the VE's testimony and the *Dictionary of Occupational Titles* ("DOT") regarding the price tag ticketer and document preparer positions. After reviewing the record as a whole, the Court agrees with Cavitt that the ALJ committed reversible error which requires remanding this case for further review.

The Social Security Administration follows a five-step sequential evaluation process for considering disability claims. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th

Cir. 2012). The claimant carries the burden of proving disability through the first four steps of the process, but at Step Five the burden shifts to the Commissioner to show that the claimant can adjust to other work in the national economy. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009); 20 C.F.R. § 404.1520(a)(4)(v). The ALJ may make this showing by eliciting testimony from a VE that is "based on a properly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies." *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997). Before relying on VE evidence to support a finding that a claimant is not disabled, an ALJ has an affirmative duty to ask about, and obtain an explanation for, any possible conflict between the VE's testimony and information provided in the DOT. *See* Soc. Sec. Ruling ("SSR") 00–4p, 2000 WL 1898704, at *4; *Renfrow v. Colvin*, 496 F.3d 918, 920–21 (8th Cir. 2007); *Kemp v. Colvin*, 743 F.3d 630, 633 (8th Cir. 2014). When an apparent conflict exists, the ALJ must "resolve the conflict by determining if the explanation given by the expert provides a basis for relying on the VE testimony rather than on the DOT information." *Moore v. Colvin*, 769 F.3d 987, 989–90 (8th Cir. 2014) (cleaned up). The ALJ must "explain in the determination or decision how he or she resolved the conflict," regardless of how the conflict was identified. SSR 00–4p, 2000 WL 1898704, at *4.

Cavitt posits that the ALJ failed to resolve two apparent conflicts between the VE's testimony and the DOT. The first concerns the VE's testimony that Cavitt

5

could perform two jobs described in the DOT as requiring "frequent" reaching,[2] despite a limitation in his RFC that restricts him to only occasionally reaching overhead with either arm.[3] When questioned by the ALJ at the hearing, the VE testified that overhead reaching is not specifically addressed in the DOT. (Tr. at 58). She stated that her answers regarding overhead reaching were based on "how the jobs are described in the DOT [as] being performed" and then she used her "knowledge, education, training, experience to equate it with" the ALJ's hypotheticals. (Tr. at 60). The ALJ did not inquire any further about the VE's experience with the jobs identified or other similar jobs. Nor did the VE provide any more detail about how her knowledge, education, or training supported her testimony.

In her written decision, the ALJ did not resolve, or even address, the apparent conflict between the VE's testimony and the DOT. Instead, the ALJ took the position that the VE's testimony was consistent with the DOT. (Tr. at 20). That position does not accord with the law of this Circuit. Numerous decisions have acknowledged that an apparent conflict exists when a VE cites jobs requiring frequent reaching for a

---

[2] See DICOT 209.587-034 (1991 WL 671802) (price tag ticketer); DICOT 249.587-018 (1991 WL 672349) (document preparer).

[3] The DOT does not specify the *direction* of reaching required for either of the jobs the VE identified. *See Moore*, 769 F.3d at 989.

6

claimant who is limited to occasional overhead reaching.[4] Thus, the discrepancy between the VE's testimony and the DOT created an apparent conflict which the ALJ was required to identify and resolve.

Overhead reaching cases in this Circuit are not all aligned and often require the Court to split hairs over the language the VE uses at the hearing. Although a VE cannot sufficiently rebut information in the DOT based on her "past experience" alone, descriptions of her training and education, her personal observation of the jobs in question, and testimony about the specific kind of reaching required to perform the jobs can form an adequate basis for the ALJ to resolve the conflict. *See Alberda v. Comm'r*, No. 3:20-cv-283, 2021 WL 4239500, at *3 (E.D. Ark. Sept. 17, 2021) (collecting cases). In this case, even if the ALJ had properly identified the overhead reaching conflict, it is doubtful whether the VE's testimony could suffice to clear the bar. But the ALJ's failure to identify the overhead reaching conflict altogether makes the decision more straightforward in this instance.

By concluding that the VE's testimony was consistent with the DOT, the ALJ necessarily failed to explain how she had "resolved" the overhead reaching conflict. Because these were the only two jobs the VE testified that Cavitt could perform, the

---

[4] *See, e.g., Kemp v. Colvin*, 743 F.3d 630, 633 (8th Cir. 2014); *Manuel v. Saul*, No. 3:20-cv-034, 2020 WL 6200186, at *1 (E.D. Ark. Oct. 22, 2020); *Montoya v. Soc. Sec. Admin.*, No. 3:18-cv-091, 2019 WL 2482719, at *2 (E.D. Ark. June 13, 2019); *Belmudes v. Comm'r*, No. 4:20-cv-445, 2021 WL 1581451, at *4 (E.D. Ark. Apr. 22, 2021); *Watson v. Kijakazi*, No. 2:20-cv-170, 2021 WL 3620295, at *3 (E.D. Ark. Aug. 16, 2021).

Commissioner has not met the burden of establishing that Cavitt could adjust to other work in the national economy. The ALJ's error is therefore material and requires remand. *See Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005) (inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as bases for remand).

Cavitt also argues the ALJ failed to resolve a second apparent conflict in this case, between jobs requiring Level 3 Reasoning skills[5] and an RFC that limits him to performing "simple, routine, and repetitive tasks" with only "simple work related decisions" and "incidental interpersonal contact with simple, direct, and concrete supervision." (Tr. at 15). Because remand is warranted in this case based on the overhead reaching conflict alone, the Court need not determine whether this discrepancy constitutes a second apparent unresolved conflict. It is worth noting on remand, however, that Cavitt's position finds support in other recent decisions from this Circuit.[6]

---

[5] Jobs with Level 3 Reasoning require a worker to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." DOT, app. C., pt. III (1991 WL 688702) (4th ed. rev. 1991).

[6] *See, e.g.*, *James v. Berryhill*, No. 3:16-cv-348, 2018 WL 783073, at *3 (E.D. Ark. Feb. 8, 2018) (RFC for "simple, routine work with simple instructions" conflicts with Level 3 Reasoning: "This Circuit has considered whether level-three reasoning exceeds the limitation to perform simple work, and found that 'tension exists' between a claimant's ability to understand, remember, and follow simple, concrete instructions and working at a job that requires level-three reasoning." (citing *Hillier v. Soc. Sec. Admin.*, 486 F.3d 359, 366 (8th Cir. 2007))); *Smith v. Comm'r*, No. 3:20-cv-317, 2021 WL 5304181, at *3 (E.D. Ark. Nov. 15, 2021) (RFC for unskilled work does not allow a claimant to perform jobs requiring Level 3 Reasoning); *Ferguson v. Saul*, No. 3:18-cv-

## IV. Conclusion

For the reasons stated above, the Court finds that the Commissioner's decision is not supported by substantial evidence. This case should be reversed and remanded for further review.

IT IS SO ORDERED this 23rd day of March, 2022.

_____
UNITED STATES MAGISTRATE JUDGE

---

242, 2019 WL 6879335, at *3 (E.D. Ark. Dec. 17, 2019) ("RFCs that more generally propose simple work with simple instructions and few changes to routine do not allow a claimant to perform level-3 reasoning jobs[.]"); *Golatt v. Saul*, No. 3:20-cv-119, 2021 WL 754828, at *3 (E.D. Ark. Feb. 26, 2021) (RFC for simple, unskilled work does not correspond to Level 3 Reasoning jobs). *But see Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) (unskilled work with Level 3 Reasoning requirement did not conflict with inability to do complex work).